IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TOMMIE HENDRICK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 20-cv-00249 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| MICHAEL BRYANT, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Tommie Hendrick alleges that he was standing on the street with friends when Chicago Police Department ("CPD") officers approached him, pointed their weapons at the group, ordered Hendrick to put up his hands and freeze, and threatened to shoot him if he moved—all despite having no reason to suspect him of committing a crime. Then, after Hendrick started recording the officers, one of them allegedly swatted Hendrick's phone out of his hand, scratching and bruising him. In the present lawsuit, Hendrick asserts, among other claims, that Defendant City of Chicago ("City") is liable for the injuries caused by the officers' use of excessive force against him because it failed to train the officers adequately. The City has moved to dismiss that claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 19.) For the reasons given below, the City's motion is denied.

BACKGROUND

For the purposes of the City's motion to dismiss, the Court accepts as true the well-pleaded facts in the Complaint and "draw[s] all reasonable inferences in the plaintiff's favor." *White v. United Airlines, Inc.*, 987 F.3d 616, 620 (7th Cir. 2021). However, the Court does not

vouch for the objective truth of those allegations. *Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018). The Complaint alleges as follows.

Hendrick was standing with his friends near Oak Street and Cambridge Avenue—an intersection near his residence—on or around August 7, 2019. (Compl. ¶ 7, Dkt. No. 1.) Hendrick was unarmed, had not committed a crime, and had not done anything to create a suspicion of criminal activity. (*Id.* ¶ 9.) Suddenly, three CPD officers drove up to Hendrick and his friends, stopped in front of them, and pointed weapons at them. (*Id.* ¶ 8.) The officers ordered Hendrick and others to put their hands up and freeze, and they threatened to shoot anyone who moved. (*Id.*) The officers then chased after a third party who was running. (*Id.* ¶ 11.) Hendrick started recording the encounter. (*Id.* ¶ 12.) Finally, one of the officers allegedly confronted Hendrick, placed his hand on his weapon, and hit Hendrick's phone out of his hand, scratching and bruising Hendrick in the process. (*Id.* ¶¶ 13–15.)

Hendrick claims that the City has a history of using excessive force, particularly against young African-American men such as him. (*Id.* ¶ 20.) Yet, according to Hendrick, the City does not document when police officers point their weapons at people. (*Id.* ¶ 22.) And the United States Department of Justice ("DOJ") found that, "[the] CPD does not investigate or review these force incidents involving less than lethal force to determine whether its responses to these events were appropriate or lawful, or whether force could have been avoided." (*Id.* ¶ 23.) Further, the DOJ found that even though police officers are technically required to report when they use force, in practice they do not provide enough detail about their actions to allow for review and investigation. (*Id.* ¶ 24.) As a result, the DOJ concluded, "there is no meaningful, systemic accountability for officers who use force in violation of the law or CPD policy." (*Id.*)

Hendrick further alleges that the CPD was required to take certain actions to increase accountability for police use of force by January 1, 2019 according to a consent decree.[1] (*Id.* ¶ 25.) Specifically, the CPD was ordered to develop a training bulletin identifying when police officers "should and should not point a firearm at a person." (*Id.*) It was also required to clarify in policy that police officers must document every time they "point[] a firearm at a person to detain the person" and that police officers can only point firearms at people "when objectively reasonable under the totality of the circumstances." (*Id.*) Further, the City was required to mandate, by July 1, 2019, that CPD officers report every time they point a gun at someone to detain them to the Chicago Office of Emergency Management and Communications. (*Id.* ¶ 26.) However, the City failed to comply with these requirements and did not implement any policy addressing police officers pointing firearms at people. (*Id.* ¶ 27.)

## DISCUSSION

Hendrick has filed a six-count Complaint, but the City's motion to dismiss only concerns Count I, which asserts a claim for excessive force pursuant to 42 U.S.C. § 1983.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, the Court need not accept a party's legal conclusions, and a party cannot defeat a Rule 12(b)(6) motion with "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* This pleading standard does not require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim

---

[1] *See* Consent Decree, *State of Illinois v. City of Chicago*, No. 17-cv-06260, (N.D. Ill. Jan. 31, 2019), Dkt. No. 703-1.

3

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although "[t]he degree of specificity required is not easily quantified . . . the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). The more complex the claim, the more detail is required. *Id.* at 616–17. Still, "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted).

### I. Rule 10(b)

The City first contends that Hendrick has violated Federal Rule of Civil Procedure 10(b) by not explicitly stating that he is asserting a *Monell* claim against the City. "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). This theory of municipal liability is commonly referred to as a *Monell* claim.

When drafting a complaint, "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense." Fed. R. Civ. P. 10(b). "The primary purpose of [Rule 10(b)] is to give defendants fair notice of the claims against them and the grounds supporting the claims[,] and a complaint is subject to dismissal if, for failure to comply with Rule 8 or 10(b), it is unintelligible." *Morgan v. Nat'l R.R. Passenger Corp.*, No. 18 C 3379, 2019 WL 414714, at *2

4

(N.D. Ill. Feb. 1, 2019) (internal quotation marks omitted). A complaint can sufficiently invoke a claim even when that claim is not listed in a separate count. *See Morgan*, 2019 WL 414714, at *3 (complaint provided sufficient notice of 42 U.S.C. § 1983 claim, even though that claim was not asserted against defendant in either of the complaint's two numbered counts); *Mathes v. Nugent*, 411 F. Supp. 968, 972 (N.D. Ill. 1976) (Rule 10(b) requires separation of claims into separate counts only when necessary to provide clarity).

The City maintains that Hendrick should have used the word "*Monell*" or taken other steps to make clear that he was pursuing a *Monell* claim against the City for use of excessive force. But Count I clearly expresses Hendrick's intention to seek relief against the City, as it names the City as a defendant against whom he seeks judgment. Further, there is no requirement that a plaintiff's complaint set out the legal theory behind his claim; only the supporting factual allegations are required. *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014); *see also Gustafson v. Jones*, 117 F.3d 1015, 1019 (7th Cir. 1997) (plaintiff need not use "magic words" related to legal theory or include legal arguments in complaint). And as both parties acknowledge, the City is not vicariously liable for the civil rights violations of its employees; instead, Hendrick must meet the requirements set out in *Monell* to establish the City's liability. Since *Monell* provides the **only** avenue for Hendrick to obtain relief against the City via § 1983, the City should not be confused as to Hendrick's intent.

As pleaded, Count I is intelligible and gives the City fair notice of Hendrick's intention to pursue a *Monell* claim for excessive force. Specifically, the count alleges that the City failed to ensure oversight and accountability when its police officers pointed guns at people. It includes several specific factual allegations in support of that claim. (*See, e.g.*, Compl. ¶¶ 22–30.) Indeed, the City's arguments in its motion to dismiss demonstrate that it has identified and understood

5

the basis of Hendrick's *Monell* claim against it. Requiring Hendrick to replead this claim via a separate count would serve no purpose and is not required by the letter or the spirit of Rule 10(b).

Finally, the City contends that because Hendrick did not respond to its Rule 10(b) argument in his response brief, he has waived any argument against it and Count I should be dismissed as to the City. But even when a plaintiff does not respond to an argument made by a defendant in a motion to dismiss, the defendant still carries the burden of persuasion and a court may not dismiss a claim based only on the plaintiff's failure to respond. *See Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021). (explaining that Rule 12(b)(6) "imposes an affirmative obligation on a movant that we cannot ignore merely because a nonmovant provides no responsive arguments"). Here, the City has not met its burden of persuasion.

## II. Adequacy of Factual Allegations

The City also contends that Hendrick has not provided any facts in support of his *Monell* claim but instead relies entirely on conclusory allegations, boilerplate language, and recitations of the elements of his claim. In particular, the City takes issue with Hendrick's allegation that the City "has not implemented any policy regarding its officers' pointing a firearm at a person" (Compl. ¶ 27), arguing that Hendrick is required to plead additional supporting facts to make this allegation plausible.

To prevail on his *Monell* claim, Hendrick "must eventually show that (1) he suffered a deprivation of a constitutional right; (2) as a result of an express policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority, that was; (3) the cause of his constitutional injury." *Shields v. City of Chicago*, No. 17 C 6689, 2018 WL 1138553, at *3 (N.D. Ill. Mar. 2, 2018) (citing *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir.

6

2017)). Further, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. . . . [Such a failure] must amount to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (internal quotation marks omitted). Hendrick alleges that he was harmed because the City failed to train its officers properly despite knowing that they were inappropriately using force and pointing firearms at people without justification. To state a claim, Hendrick must plead facts suggesting that the City's policymakers were "deliberately indifferent as to [the] known or obvious consequences" of the alleged harmful practice. *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010).

      To begin, Hendrick's allegation that the City has no policy specifically regarding police officers pointing guns at people is a factual contention, not a legal conclusion. If Hendrick merely alleged a conclusion, such an allegation could be disregarded. *See Iqbal*, 556 U.S. at 679 ("[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.") If Hendrick had proceeded by vaguely describing the City's policy deficit, or by pleading legal conclusions regarding the policy, his pleading would have been entitled to no deference. *See McCauley*, 671 F.3d at 617 (disregarding allegation that City of Chicago "has an unwritten custom, practice and policy to afford lesser protection or none at all to victims of domestic violence" for which "[t]here is no rational basis"). But Hendrick is specific about the alleged problem with the City's gun-pointing policy: it does not have one.[2] This allegation is not vague

---

[2] Hendrick's theory is that the CPD failed to implement specific policies about gun-pointing, even after agreeing to do so under a consent decree and despite awareness that police officers often failed to follow rules regarding use of force after pointing guns at people (for example, by choosing not to document the

and does not smuggle in any legal conclusions, nor does it merely state an element of a *Monell* claim, such as deliberate indifference by the City.

Still, Hendrick must allege enough facts to make his claim for relief plausible on its face. Standing alone, his allegation that the City lacks a gun-pointing policy might not rise to this level. But he also alleges that the City, under the consent decree, was required to clarify in its policy on when it is appropriate for police officers to point guns at people, to train its officers regarding that policy, and to ensure that such actions are documented. (Compl. ¶¶ 25–26, 29.) He further alleges that the City was ordered to implement those reforms by January and July 2019— months before police officers stopped him, pointed their weapons at him, threatened to shoot him, and struck his phone from his hand. (*Id.* ¶¶ 7–15, 25–26.) Thus, Hendrick has plausibly alleged that the City lacked a specific policy regarding gun-pointing by police officers and accordingly failed to train officers regarding that policy.

Hendrick has also plausibly alleged that the City was deliberately indifferent to the consequences of not establishing such a policy and ensuring appropriate training. As pleaded, the City had ample notice that police officers were inappropriately pointing weapons at people and that action was needed to remedy that problem. Other courts in this District have allowed similarly supported *Monell* claims to proceed. *See, e.g., Mendez v. City of Chicago*, No. 1:18 C 6313, 2019 WL 4934698, at *3 (N.D. Ill. Oct. 7, 2019) (plaintiff plausibly alleged *Monell* claim by pleading that (1) a Chicago police officer shot him, without justification, during a foot pursuit; (2) the Department of Justice had documented similar misconduct; and (3) the CPD had not provided training or enforced rules regarding use of force).

---

gun-pointing). Making inferences in Hendrick's favor and "draw[ing] on its judicial experience and common sense," the Court finds Hendrick's allegations to be plausible. *Iqbal*, 556 U.S. at 679.

The City cites a range of district court decisions dismissing *Monell* claims for being insufficiently pleaded, but those cases are inapposite because the plaintiffs provided significantly less detail regarding the municipalities' policies and practices. *See, e.g.,* Order, *Watson v. City of Chicago*, Case No. 15-cv-11559 (N.D. Ill. Aug. 23, 2017), Dkt. No. 82 (plaintiff who "provide[d] nothing more than a quote from the Mayor and a restatement of [a task force's executive summary]" did not plausibly allege *Monell* claim); *Elsayed v. Village of Schaumburg*, No. 14 C 8387, 2015 WL 1433071, at *5 (N.D. Ill. Mar. 26, 2015) (bare allegation that municipality had "widespread custom, practice and de facto policy of encouraging and permitting its police officers to make arrests without probable cause," and did not train or supervise officers, did not plausibly allege *Monell* claim); *Echezarreta v. Kemmeren*, No. 10 C 50092, 2013 WL 4080293, at *3 (N.D. Ill. Aug. 13, 2013) (bare allegation of "deliberate indifference," without specific supporting facts, was insufficient to support *Monell* claim). None of the cases cited by the City involved a specific allegation that the defendant municipality had knowledge of a problem with its policies, agreed to remedy the problem, and then failed to remedy the problem, as Hendrick has alleged here.

Finally, the City contends that Hendrick's Complaint is insufficient because he only alleges one instance of unconstitutional conduct and has not alleged "additional facts probative of a widespread practice or custom." *Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1079 (N.D. Ill. 2018). But Hendrick has pointed to such facts through his allegations that the City agreed to, and then failed to, adopt a gun-pointing policy under the consent decree. A single instance of unconstitutional conduct, when combined with allegations indicating a broader practice, can suffice to state a *Monell* claim. *See White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016) (holding that plaintiff "was not required to identify every other or even one other

individual" who had suffered the same harm because plaintiff had alleged facts indicative of department-wide practice).

### III. Causal Connection

The City also maintains that Hendrick has not plausibly alleged causation—that is, that he was injured *because* the City lacked a gun-pointing policy. To survive the City's motion to dismiss his *Monell* claim, Hendrick must plead facts indicating that the City's "policy or custom not only caused the constitutional violation, but was 'the moving force' behind it." *Est. of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2014) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). "The first question . . . is whether the complaint alleges a direct causal link between a policy or custom . . . and the alleged constitutional violations." *Id.* at 515.

To plead a direct causal link, Hendrick must suggest that the specific training failure, if remedied, could have prevented the harm he suffered. *See Jones v. Hunt*, No. 19 C 4118, 2020 WL 814912, at *2 (N.D. Ill. Feb. 19, 2020) (allegation that defendant city failed to train officer regarding proper procedures for obtaining arrest warrant did not support *Monell* claim because plaintiff did not assert that "[the officer's] actions were illegal *because* [the officer] failed to secure an arrest warrant"). Hendrick's Complaint establishes this connection. The policy gap of which he complains—the City's failure to train officers not to point their firearms at people without sufficient justification despite knowledge that such training was needed to remedy constitutional violations—is directly connected to the harm he alleges. *See Mendez*, 2019 WL 4934698, at *3 (plaintiff who was shot while fleeing police stated *Monell* claim by describing training failures regarding use of force against fleeing suspects and giving similar examples from DOJ report); *Shields*, 2018 WL 1138553, at *4 (N.D. Ill. Mar. 2, 2018) (plaintiff stated *Monell*

claim by alleging facts indicating that police department covered up unconstitutional uses of force and alleging that he had suffered a similar injury).

Hendrick has pleaded that the "moving force" of his injury was "CPD's refusal to train and document when its officers point a weapon at someone." (Compl. ¶ 29.) Hendrick's say-so that the lack of training caused his injury is, of course, entitled to no deference. But Hendrick's factual allegations—including the City's awareness of its gun-pointing problem, its failure to comply with court orders regarding new policies and training, and the specific injury suffered by Hendrick—allow the Court, making inferences in Hendrick's favor, to conclude that Hendrick has plausibly alleged the necessary connection. He will, of course, have to support that causal link with proof to avoid summary judgment and, eventually, at trial. But for now, his allegations are sufficient to state a claim.

Finally, the City contends that Hendrick's *Monell* claim must be dismissed because he failed to respond to the City's arguments regarding the required causal link. But Hendrick did respond to those arguments, at least in passing, by pointing to the paragraph in his Complaint where he alleges that the City's failure to train was the moving force of his injury.[3] And again, a defendant must meet its burden of persuasion on a Rule 12(b)(6) motion to dismiss even when the plaintiff does not respond to an argument. *Marcure*, 992 F.3d at 631. The City has not demonstrated that the Complaint fails to allege the required causal connection, and the Court therefore will not dismiss Hendrick's *Monell* claim.

---

[3] Hendrick's response brief was not organized into sections responsive to the City's arguments, making it unnecessarily difficult to track his arguments.

## CONCLUSION

For the above reasons, the City's motion to dismiss Count I (Dkt. No. 19) is denied.

ENTERED:

Dated: September 30, 2021

_____
Andrea R. Wood
United States District Judge

12